Raymond SYUFY; Marcia Syufy, Plaintiffs-Counterclaim Defendants-Appellees,

v.

UNITED STATES of America, Defendant-Counterclaimant-Appellant.

No. 86–1880.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 1987.

Decided June 4, 1987.

---

8.   Therefore, the district court's grant of summary judgment to the City was improper.

Roger M. Olsen and Ann Belanger Durney, Washington, D.C., for defendant-counterclaimant-appellant.

Randall G. Dick, San Francisco, Cal., and Bruce I. Hochman, Beverly Hills, Cal., for plaintiffs-counterclaim defendants-appellees.

Before SCHROEDER, WIGGINS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

The government appeals from a summary judgment entered in favor of taxpayers Raymond and Marcia Syufy. The district court held that I.R.C. § 1491 did not apply to Raymond Syufy's 1972 transfer of appreciated securities to a Bahamian trust in exchange for a lifetime annuity of equal value, 651 F.Supp. 1282. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

### FACTS AND PROCEEDINGS

On February 14, 1972, Raymond Syufy transferred 5,654 shares of Syufy Investment Corporation ("SIC") preferred stock,

valued at $2,827,000, to Wobaco Trust, Ltd. ("Wobaco"), as trustee of a Bahamian trust (the Smoller Trust), in exchange for Wobaco's promise to pay Syufy an annuity of $268,982 per year for life. The annual payments were computed by dividing the February 14, 1972 fair market value of the transferred SIC stock by the appropriate annuity factors listed in Table A(1) of the Estate Tax Regulations § 20.2031–10. It is undisputed that the value of the annuity was equal to the value of the stock on the date of the transfer.

Wobaco, as trustee of the Smoller Trust, has made every payment required by the February 1972 annuity agreement. Pursuant to I.R.C. § 72, as interpreted by Rev. Rul. 69–74, 1969–1 C.B. 43, each annuity payment of $268,982 has been reported and included in the Syufys' joint federal income tax returns. Of these payments, $123,638 has been reported annually as capital gains income, $124,778 as interest income from the annuity, and $20,566 as a return of basis. This allocation of payments is not challenged. To date, the 1972 sale of stock (a capital asset worth $2,827,000 in 1972) has resulted in ordinary income to the Syufys of $1,856,114 and capital gain income of $1,607,294.

At the time of the agreement, Wobaco Trust (Bahamas), Ltd. was a wholly-owned subsidiary of the World Banking Corp., Ltd., a Bahamian Bank. Wobaco is currently a wholly-owned subsidiary of Bank of America. There is no dispute that Wobaco has exercised its independent judgment and fulfilled its fiduciary obligations in administering the Smoller Trust. It has invested Smoller Trust funds only in publicly-traded securities, bonds, certificates of deposits and U.S. Treasury obligations. Trust funds have not been loaned to the Syufys or invested in Syufy-related business ventures. Neither of the Syufys has ever exercised any management or control over the assets of the Smoller Trust.[1]

On March 21, 1983, the Commissioner of Internal Revenue, pursuant to Section 1491 of the Internal Revenue Code of 1954, assessed an excise tax of $777,425 against the Syufys on the February 1972 transfer. At that time, the Commissioner assessed an additional $233,277 in penalties and $783,564 in interest under I.R.C. §§ 6651 and 6653. The Syufys paid $13,750 of the assessment,[2] sought an administrative refund, and then brought this tax refund action in the United States District Court for the Northern District of California. 28 U.S.C. § 1346(a)(1). The Syufys claimed that they were entitled to a refund of the $13,750 they paid, and abatement of the remaining assessment, interest and penalties. The government counterclaimed for the remainder of the assessment.

In the district court, the Syufys argued that the 1972 sale of SIC stock to the Bahamian trust in exchange for a lifetime annuity was a sale for an adequate consideration which section 1491 was not intended to cover. The government contended that Congress intended section 1491 to apply to all transfers of stock or securities to a foreign situs trust, including a transfer for a lifetime annuity. Moreover, the government argued, the Syufys' purported sale was, in reality, a transfer in trust with a retained income interest and was thus subject to section 1491. The Syufys filed a motion for summary judgment. The district court granted the motion, entered judgment for the Syufys, and dismissed the government's counterclaim. The district court concluded that the transfer of SIC

---

1. Under the provisions of the trust agreement, the trust estate remaining at the death of Raymond Syufy will pass to his heirs.

2. A taxpayer is permitted to contest the assessment of a section 1491 excise tax by paying the tax on a divisible portion of the transfer and suing for a refund. See Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960), where the Supreme Court held that the taxpayer must generally pay the full amount of the assessment before he may challenge its validity in an action under section 1346(a)(1), but noted that "[e]xcise tax assessments may be divisible into a tax on each transaction or event, so that the full-payment rule would probably require no more than payment of a small amount." 362 U.S. at 175 n. 38, 80 S.Ct. at 646 n. 38. Accordingly, as the typical stock transaction involves sales of round lots (100 shares), the $13,750 the Syufys paid equals the amount assessed on the transfer of 100 shares of SIC stock.

stock to the foreign trust was not subject to a section 1491 excise tax because "the securities' value at the time of the foreign trust's receipt of the securities was equaled at that time by the present value of the annuity payments to be provided in exchange for the securities. After all, for tax years after 1972, federal income tax has been imposed on the annuity payments to [the Syufys], which payments have been treated partly as ordinary income and partly as capital-gains income." *Syufy v. United States,* No. C–84–1084 (N.D.Cal. Jan. 21, 1985). The government filed this timely appeal.

## ANALYSIS

■ The issue on appeal is whether Raymond Syufy's 1972 transfer of appreciated securities to the foreign situs trust in exchange for a private annuity of equal value is subject to an excise tax under I.R.C. § 1491. We review this question of law de novo. *See Wilkin v. United States,* 809 F.2d 1400, 1401 (9th Cir.1987); *see also United States v. Hunter Engineers & Constructors, Inc.,* 789 F.2d 1436, 1437 (9th Cir.1986) (both a question of law and a grant of summary judgment reviewed de novo), *cert. denied,* — U.S. ——, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).

A. *Section 1491 of the I.R.C. of 1954*

■ Section 1491 imposes an excise tax on transfers of stock or securities to foreign trusts by a U.S. citizen. In 1972, the amount of the excise tax was equal to 27½ percent of the amount of the excess of the value of the stock or securities over the adjusted basis in the hands of the transferor. The 1972 version of I.R.C. § 1491 provided:

There is hereby imposed on the transfer of stock or securities by a citizen or resident of the United States or by a domestic corporation or partnership, or by a trust which is not a foreign trust, to a foreign corporation as paid-in surplus or as a contribution to capital or to a foreign trust, or to a foreign partnership, an excise tax equal to 27½ percent of the excess of—

(1) the value of the stock or securities so transferred, over

(2) its adjusted basis (for determining gain) in the hand of the transferor.

Section 1492 provided that the excise tax would not apply "[i]f before the transfer it has been established to the satisfaction of the Secretary or his delegate that such transfer is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes." I.R.C. of 1954, § 1492(2). Moreover, under section 1494, "the tax may be abated, remitted, or refunded if after the transfer it has been established to the satisfaction of the Secretary or his delegate that such transfer was not in pursuance of a plan having one of its principal purposes the avoidance of Federal income taxes." I.R.C. of 1954, § 1494(b). The Syufys did not seek a pretransfer determination under section 1492. After the tax was assessed, they filed a claim under 28 U.S.C. § 1346(a)(1) for refund of the $13,750 they had paid and for abatement of the remainder of the assessment. The Commissioner did not "abate, remit, or refund" the tax under section 1494. He took no action at all. When he had failed to act for six months, the Syufys filed their present action in the district court.[3]

Basing its position in part on a "plain language" argument, the government contends that the meaning of "transfer" in section 1491 encompasses Raymond Syufy's stock-for-annuity exchange, and that the sale for full and adequate consideration is subject to an excise tax, even though the Syufys reported the appropriate amount of annuity payments as taxable income. We do not find the meaning of the statute to be as clear as the government would have us

---

**3.** Section 1492 permits the Secretary or his delegate to make a determination, in advance of an intended transfer, that a proposed transaction will not trigger an excise tax under section 1491. Section 1494 permits the Secretary or his delegate to abate, remit, or refund a tax imposed under section 1491. Neither section requires a taxpayer who seeks to avoid the imposition of tax under section 1491 to obtain either such IRS determination.

believe.[4] As one commentator has noted, the version of section 1491 that applies here is "an extreme example of uncertain and vague legislation." Adams, "Section 1491—Internal Revenue Code," 49 *Taxes* 68, 70 (1971). Not only is there a dearth of authority interpreting the strictures of section 1491, *See Stern v. United States*, 650 F.Supp. 16, 19 (D.Nev.1986), but the few sparse regulations adopted under the statute simply parrot the statutory language and promulgate procedures for taxpayers applying for exemptions and filing the return required under section 1494(1). The regulations are completely silent as to guidelines or interpretation.

To aid our analysis of section 1491, we turn to the legislative history. *See, e.g., Foster v. United States*, 303 U.S. 118, 120, 58 S.Ct. 424, 425, 82 L.Ed. 700 (1938) ("Courts should construe laws in harmony with the legislative intent and seek to carry out legislative purpose.") In enacting the predecessor of section 1491 (section 901 of the Revenue Act of 1932), Congress stated that the purpose of the excise tax was to "check transfers of stock or securities in which there is a large appreciation in value to foreign corporations or trusts for the purpose of avoidance of taxes on capital gains." H.R.Rep. No. 708, 72d Cong., 1st Sess. 51–52 (1932), *reprinted in* 1939–1 C.B. (pt.2) 457, 494 [hereinafter H.R.Rep. No. 72–708]; *accord*, Senate Rep. No. 665, 72d Cong., 2d Sess. 55–56 (1931), *reprinted in* 1939–1 C.B. (pt.2) 496, 536 [hereinafter S. Rep. No. 72–665]. The House Report illustrated the problem section 1491 sought to avoid:

> As an example, A, who owns substantially all the stock in a foreign corporation, transfers stock or securities, which have appreciated in value, to such corporation as paid-in surplus, and thereafter the corporation sells such assets and invests the proceeds of the sale. Thus the proper tax upon such realized gain is lost, although A retains complete control over and derives all the benefit from the proceeds of the sale. A participated in no transaction in which gain could be attributed to him under existing law. Consequently, your committee has considered it appropriate to levy an excise tax upon the transfer of stock or securities under such circumstances, and thus to check avoidance.

H.R.Rep. No. 72–708, at 51–52.

The situation contemplated by Congress was a transfer of blocks of appreciated stock to foreign corporations or trusts and subsequent sale of the stock by the corporation or trust without United States tax consequences. Section 1491 was adopted to plug a loophole existing in the 1920's, by which taxpayers could transfer stock which had appreciated in value over cost to a foreign corporation or trust, and then the foreign entity could sell the stock and avoid capital gains tax. *See Adams, supra,* at 69. Section 1491 created a tax at the time of transfer to the foreign entity, as if a sale had occurred, so that capital gains tax revenues would not be lost.

---

**4.** The government's "plain language" argument is somewhat curious. In light of the apparent difficulty IRS counsel, the 94th Congress, and the Commissioner of Internal Revenue have had in determining the application of section 1491, we are surprised that the government now argues that the meaning of the statute is so clear. For many years, the IRS advised taxpayers that the section 1491 excise tax did *not* apply to sales and exchanges taxable under the income tax provisions of the I.R.C. *See, e.g.,* Priv.Ltr.Rul. 54–09–036670A (Sept. 3, 1954) (a bona fide sale of stock or securities to a foreign trust for consideration equal to the full fair market value of such stock or securities is not the kind of "transfer" contemplated by section 1491 and therefore, not subject to the excise tax); Gen. Couns.Mem. 33,392 (Dec. 16, 1966); Gen.Couns. Mem. 34,123 (May 9, 1969). When considering amendments to section 1491, the 94th Congress apparently did not find the meaning of the language so clear; it concluded that the law was "not clear" on transfers for adequate consideration. S. Rep. No. 938, 94th Cong., 2d Sess. 223, *reprinted in* 1976 U.S. Code Cong. & Admin. News 2897, 3439, 3653. In effect, the government is saying that for eleven years (from 1972 when the transfer was reported until 1983 when the excise tax was imposed)—despite the allegedly plain language and clear Congressional intent—the Commissioner slept on the rights of the United States. *Cf. Dickman v. Comm'r,* 465 U.S. 330, 348–49, 104 S.Ct. 1086, 1096–97, 79 L.Ed.2d 343 (1984) (offering a similar criticism of the majority's plain language interpretation of "transfer" in I.R.C. §§ 2501(a)(1), 2511(a)) (Powell, J. dissenting).

### B. *A Transfer for Full and Adequate Consideration*

The Syufys contend that Congress never intended to apply section 1491 to a sale of stock made for full and adequate consideration. Indeed, the House version of the original bill provided a blanket exemption for all such transfers. The 1932 House Ways and Means Committee Report stated that "In order not to interfere with legitimate business transactions, the tax is not imposed *if the transfer is for full and adequate consideration....*" H.R.Rep. No. 72–708 at 51–52 (emphasis added). The Senate, however, revised the proposed statute, and eliminated the full and adequate consideration language. The Senate apparently believed that the exemption might be interpreted in a manner which would provide a loophole for the continued avoidance of the capital gains tax. The Senate Finance Committee stated:

In this connection your committee believes that the bill should not either expressly or by implication permit the argument that an increment in value of shares or of a beneficial interest resulting from a transfer of stocks or securities should be considered full consideration in money or money's worth, and the presence of a valuable and adequate consideration in a transaction should simply constitute one of the elements of the transaction on which the Commissioner should base his conclusion as to one of the principal purposes of the plan is to avoid Federal income taxes. Your committee believes that the Commissioner should have the widest latitude for the exercise of a sound discretion in the application of this title, both before and after the transfers are carried out.

S. Rep. No. 72–665 at 55–56.

The statute was enacted with the modifications suggested by the Senate amendment. H.R. Conf.Rep. No. 1492, 72d Cong., 1st Sess., *reprinted in* 1931-1 C.B. (pt. 2) 539, 552.

According to the government, deleting the full and adequate consideration language manifested Congressional intent to broaden the scope of the statute. The government argues that it is apparent from the Senate Committee Report that Congress expressly considered, but rejected, exempting transfers for full and adequate consideration from the reach of the excise tax. However, the Syufys argue—and a number of commentators agree—that despite the Senate's amendment, Congress did not intend the statute to cover bona fide sales for full and adequate consideration. *See, e.g.,* W. Surrey & T. Shaw, *International Business Transactions* 81–82 (1963); Kanter & Horwood, "Section 1491 Tax and Private Annuity/Foreign Situs Trust Transaction," 52 *Taxes* 388 (July 1974); Adams, *supra* at 72.

What Congress may have intended to prevent was:

the possible misinterpretation of the statute to exempt from the proposed excise tax a transfer of appreciated stock or securities to a foreign corporation by capital contribution without issuance of new shares which would increase the value of the already outstanding shares. The consensus of the Senate Finance Committee was that it might be argued that this increase in value was full and adequate consideration for the transfer. Since that very transaction was to be subject to the excise tax, any such possible interpretation would have negated the intended effect of the new statutory provision. Similarly, in the case of a transfer to a foreign trust with a resulting incremental increase in value of the beneficial interest there again could be a misinterpretation which would negate the intended burden on such transfers.

Kanter & Horwood, *supra*, at 398 (footnote omitted). According to this argument, the language was deleted to plug potential loopholes and prevent misinterpretation of the meaning of "full and adequate consideration," not to incorporate all sales for full and adequate consideration within the purview of section 1491.

The Senate Finance Committee's sensitivity to a potential loophole in the statute may have resulted from the Board of Tax Appeal's decision in *Rosenbloom Finance Corp. v. Commissioner,* 24 B.T.A. 763

(1931), *rev'd on other grounds*, 66 F.2d 556 (3rd Cir.), *cert. denied*, 290 U.S. 692, 54 S.Ct. 127, 78 L.Ed. 596 (1933), where the tax court held that a majority stockholder who transferred valuable property to his corporation and received no stock, money or other property in exchange, nevertheless received "consideration" in the form of the increased value of his existing stock. *See Abegg v. Commissioner of Internal Revenue*, 429 F.2d 1209, 1218 (2nd Cir.1970) ("It may well be ... that [the Senate's changes of the House Bill] represented an unnecessary overreaction to the decision of the Board of Tax Appeals with respect to contributions to capital or surplus in the *Rosenbloom* case, and that if Congress had only remained silent, the courts would have handled the problem."), *cert. denied*, 400 U.S. 1008, 91 S.Ct. 566, 27 L.Ed.2d 621 (1971); *see also* Kanter & Horwood, 52 *Taxes* at 395–96 (an unnecessary overreaction to the contribution to capital argument based on *Rosenbloom* caused the Senate Finance Committee to eliminate the House Bill language). The Senate apparently feared that "consideration" would be interpreted too liberally, becoming a categorical talisman to shield the very transfers the statute was enacted to tax.

## C. *The 1976 Amendment*

In 1976, Congress amended section 1491 to expand the scope of the excise tax and increase the rate of taxation. Although the beliefs of a subsequent Congress provide a "hazardous basis" to infer the intent of an earlier Congress, *see Consumer Product Safety Comm'n v. GTE Sylvania,*

*Inc.*, 447 U.S. 102, 117–18, 100 S.Ct. 2051, 2060–61, 64 L.Ed.2d 766 (1980) (quoting *United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334 (1960)), the 1976 congressional committee reports illustrate the uncertainty surrounding the application of section 1491 to exchanges for full and adequate consideration. "Under present law, it is not clear whether the provision applies to all transfers of appreciated securities regardless of whether gain is realized." S. Rep. No. 938, 94th Cong., 2d Sess. 223, *reprinted in* 1976 U.S. Code Cong. & Admin. News 3439, 3653 [hereinafter S. Rep. No. 94–938]. Both the House and the Senate Committee reports noted that section 1491 had been interpreted to exclude transfers to foreign entities to the extent that the entity provides some consideration to the transferor. S. Rep. No. 94–938 at 217;[5] H.R.Rep. No. 658, 94th Cong., 2d Sess. 208, *reprinted in* 1976 U.S. Code Cong. & Admin. News 2897, 3103 [hereinafter H.R.Rep. No. 94–658]. Prior to the Tax Reform Act of 1976, section 1491 "was felt not to apply where the foreign trust provided some consideration (such as a private annuity contract) to the transferor." *Stern v. United States*, 563 F.Supp. 484, 488 (D.Nev.1983), *stay lifted, summary judgment granted*, 650 F.Supp. 16 (D.Nev. 1986).

The 1976 amendment applied the excise tax to all transfers, including tax-free exchanges, whether or not at fair market value. Thus, all sales and exchanges after October 2, 1975, including private annuity transactions, regardless of how any gain

---

**5.** This 1976 Senate Report stated:

For example, a U.S. taxpayer can transfer appreciated stock to a trust established by him and can receive in return from the trust a private annuity contract or other deferred payment obligation. Since the contract is viewed as consideration for the assets transferred, section 1491 has been interpreted by some tax advisors not to apply to the transfer. Under this view, the transferor can transfer an asset to a foreign trust and cause it to be sold without payment of tax and can receive, in return, annual payments which are taxed over a number of years. The effect of this transaction is that the transferor defers payment of a substantial amount of tax attributable to the sale of the appreciated asset and

obtains the benefit of a tax-free accumulation of the proceeds of the sale. The Committee believes that any policy in favor of permitting deferral of tax in private annuity transactions should not apply to a private annuity transaction with a foreign trust. These trusts have limited assets, so that if the transferor outlives his life expectancy the trust will often be unable to continue annuity payments, and if the transferor dies prematurely his beneficiaries receive the remaining trust assets. These facts make the transaction quite different from a conventional private annuity. The Committee believes it is appropriate to tax a transfer of assets in these situations. S. Rep. No. 94–938 at 217.

on the transaction is reported, are within the scope of the amended excise tax provision. S. Rep. No. 94–938 at 223–24. However, Congress noted that the excise tax still did not apply if the transfer was not in pursuance of an income tax avoidance plan. "It is contemplated that ordinary business sales and exchanges involving an unrelated foreign trust will normally be determined not to be in pursuance of a plan of tax avoidance." S. Rep. No. 94–938 at 223; H.R.Rep. No. 94–658 at 213–14, U.S.Code Cong. & Admin.News 3108, 3653.

We agree with the 94th Congress that prior to the 1976 amendments, it was "not clear" whether section 1491 imposed an excise tax on transfers for consideration. And, although we reject the government's contention that the plain meaning of the statute and the legislative history mandate such a tax, we do not hold that *all* transfers for adequate consideration fall outside the ambit of section 1491. We need not make that broad pronouncement because the Syufy transfer at issue here involved not only an exchange for full and adequate consideration, but also an exchange that resulted in taxable income on which the Syufys have paid all taxes due.

D. *The Exchange: Stock for Taxable Annuity Payments*

■ Raymond Syufy exchanged SIC appreciated stock for lifetime annual annuity payments subject to income and capital gains taxes. The value of the annuity equaled the value of the securities at the time of the transaction. Each payment, as received, constituted a return of basis, inter-

est, and capital gains, and was duly reported on the Syufys' federal income tax returns. The securities-for-annuity transfer was a taxable event;[6] income from the annuity, although deferred, was taxable.

■ To impose a section 1491 excise tax on the transfer would penalize the Syufys with double taxation. Section 1491 was not intended to impose a penalty or a double tax. The statute was designed to prevent the transfer of appreciated securities to a foreign entity without the payment of capital gains taxes. The section 1491 excise tax was created as an *alternative* to the otherwise applicable income tax on the appreciation built into the securities transferred. *See* Kanter & Horwood, *supra*, at 397; *see also In re King*, 424 F.Supp. 117, 136 (D.Colo.1975) (section 1491 excise tax is, in effect, "a *substitute* for the income tax which the transferor would have to pay on the gain realized if the transfer had been a sale or exchange" (emphasis added)). Congress never intended that the taxpayer should be subject to both income tax on any excess of value over the basis and to excise tax on the same amount. *Abegg v. Commissioner of Internal Revenue*, 429 F.2d 1209, 1217 (2nd Cir.1970), *cert. denied*, 400 U.S. 1008, 91 S.Ct. 566, 27 L.Ed.2d 621 (1971). The statute was designed to guarantee the government its share of capital gains. It was not adopted to impose double taxation.[7]

■ Although the Syufy stock-for-annuity exchange created *estate* tax benefits,[8] the annuity payments received in ex-

---

6. Although some courts have characterized an annuity exchange (property for promise of annual annuity payments) as a non-taxable event, this is a misnomer—the exchange is taxable, it only involves deferred tax treatment. *See, e.g.,* Kassoy, "The Private Annuity and Foreign Situs Trust," 16 U.C.L.A.L.Rev. 86, 91 n. 18 (1968).

7. A 1971 amendment to section 1491 also supports the Syufys' contention that the section 1491 excise tax is not a double tax. In 1971, Congress amended section 1491 to provide an exception from the excise tax for transfers covered by I.R.C. § 367(d), which was added to the Internal Revenue Code at the same time. *See* I.R.C. § 1492(3), as amended by P.L. No. 91–681, 84 Stat. 2065. Section 367(d) provides that

certain contributions to the capital of a foreign corporation are to be treated as taxable exchanges of property for income tax purposes if stock in the corporation is equal in value to the property transferred. Although a transfer in the nature of a contribution to capital normally would be subject to the § 1491 excise tax, Congress amended section 1491 to ensure that no excise tax would be due in this situation, since the contribution was already taxable under section 367(d). The result of this exception was to avoid applying section 1491 to transfers already subject to the income tax provisions of the Code.

8. Estate tax advantages gained by the sale of appreciated securities to a foreign situs trust in exchange for an annuity include (1) the poten-

change for the appreciated securities were at all times subject to *income* taxes. The touchstone for applying a section 1491 excise tax upon a transaction involving appreciated securities is to determine whether the transfer is in pursuance of a plan to avoid *income* tax. For purposes of section 1491, it is irrelevant if the transfer is in pursuance of a plan to avoid *estate* taxes. Within the strictures of the tax code, Syufy "may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury." *Helvering v. Gregory*, 69 F.2d 809, 810 (2nd Cir.1934) (L. Hand, J.), *aff'd*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). "[N]obody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions." *Atlantic Coast Line R.R. Co. v. Phillips*, 332 U.S. 168, 173, 67 S.Ct. 1584, 1587, 91 L.Ed. 1977 (1947) (quoting *Commissioner v. Newman*, 159 F.2d 848, 851 (2nd Cir.) (L. Hand, J., dissenting), *cert. denied*, 331 U.S. 859, 67 S.Ct. 1755, 91 L.Ed.2d 1866 (1947)).

■ The government argues that the transfer was not really a sale in exchange for a private annuity, but, instead, was a transfer in trust with a retained income interest. However, there appears to be no basis for distinguishing the annuity exchange here from the transfer in *Stern v. Commissioner of Internal Revenue*, 747 F.2d 555 (9th Cir.1984); *see LaFargue v. Commissioner of Internal Revenue*, 689 F.2d 845 (9th Cir.1982); *Benson v. Commissioner*, 80 T.C. 789 (1983). Uncontroverted affidavits show that the Syufys did not control the trust. Wobaco, as trustee, acted independently to fulfill its fiduciary obligations. As in *Stern*, there is no pattern of control by the annuitant here sufficient to justify treating the exchange as a transfer in trust subject to a retained in-

come interest. We conclude that the transfer was a sale in exchange for an annuity. "This conclusion is strengthened because the value of the [annuity] ... equaled the fair market value of the stock exchanged therefor, as determined pursuant to the appropriate Treasury Regulations." *Stern*, 747 F.2d at 559–60.[9]

■ If the transfer is one in which the transferor purchases a private annuity, resulting in appropriate income and capital gains taxes, then under the tax law as it existed in 1972, the transferor should not be required to pay a capital gains tax on the transaction as well as a section 1491 excise tax. Here, there is no claim of any impropriety in the values placed upon the assets transferred to the trust or in the portion of the annuity payments being reported as income, capital gains, and return of basis.

## CONCLUSION

We conclude that Congress did not intend to impose a section 1491 excise tax on a 1972 transfer of appreciated securities for a private annuity when the annuity is full and adequate consideration for the transfer and is subject to federal income and capital gains taxes which are being properly reported and paid. Raymond Syufy's transfer of his appreciated securities in exchange for a private annuity of equal value is exempt from the excise tax imposed by the 1972 version of section 1491.

AFFIRMED.

tial removal of the securities from the annuitant's gross estate; (2) the potential elimination of estate taxes on future appreciation of the securities; (3) the inapplicability of gift taxes or problems under I.R.C. § 2035 (transfers in contemplation of deaths). *See Stern v. Commissioner of Internal Revenue*, 747 F.2d 555, 556 n. 1 (9th Cir.1984).

9. And, as the Syufys point out, after the IRS counsel traveled to the Bahamas to inspect the Smoller Trust files, and after he spoke with the trust officer and deposed Raymond Syufy and his attorneys, the government essentially abandoned this argument at the hearing on the Syufys' summary judgment motion. Thus, the district court did not consider this issue.